R. E. LOWRY V. ANDERSON-BERNEY BUILDING COMPANY.

No. 7811. Decided April 1, 1942.
Rehearing overruled April 29, 1942.
(161 S. W., 2d Series, 459.)

**30**

*H. S. Lattimore*, of Fort Worth, for plaintiff in error.

On the question of the liability of defendant for keeping in its employ one who was accustomed during his working hours to engage in acts of violence toward his fellow employees. International & G. N. R. R. Co. v. Wing, 34 S. W. 292; Texas & Pac. Ry. Co. v. Gibson, 180 S. W. 1134; Jackson v. Watson, 10 S. W. (2d) 977, 982.

*Simpson & Harrison*, of Fort Worth, for defendant in error.

MR. JUDGE SLATTON delivered the opinion of the Commission of Appeals, Section B.

R. E. Lowry filed this suit in the 67th District Court of Tarrant County against Anderson-Berney Building Company to recover damages for personal injuries received by him while

engaged in the performance of a painting contract in the building owned by the company as a result of the conduct of an employee of the building company. A jury trial resulted in a special issue verdict upon which the trial court rendered judgment against the building company in favor of Lowry for the sum of $13,000.00. The building company appealed to the Court of Civil Appeals at Fort Worth. The judgment of the trial court was reversed and judgment was rendered that Lowry take nothing. 143 S. W. (2d) 401. Lowry was granted the writ of error.

Lowry alleged that Countryman was supervising and inspecting on behalf of the building company and acting within the scope of his employment when he approached plaintiff in said building unknown to plaintiff, who was at that time working and engaging in carrying out a contract with defendant, and said Countryman struck plaintiff on the back and on the shoulder and in defiant tones accompanying said blow demanded of plaintiff why he did not get to work, and that Countryman "was well known to be a man who used physical violence upon those persons who are in the building * * * employees or employees of contractors and such matters were well known to the defendant * * * and the act of the defendant in retaining said Countryman at the time * * * was negligence and the proximate cause of the injury." The building company pleaded a general denial and specially that the act committed by Countryman was committed in his own behalf and through a spirit of playfulness and was not within the scope of his employment with the building company. The jury found: (1) That plaintiff was an independent contractor when he fell; (2) that the act of the defendant's employee, Countryman, in causing the plaintiff to fall on the occasion in question, was negligence on the part of the said Countryman; (3) such negligence was a proximate cause of plaintiff's falling; (4) that Countryman, in causing the plaintiff to fall on the occasion in question, was acting within the scope of his employment; (5) that at and prior to the time of the plaintiff's falling on the occasion in question Countryman was in the habit of using physical violence upon persons who were employees or contractors of the defendant; (6) this habit was known to the defendant; (7) that defendant was negligent in retaining Countryman in its employ; (8) such negligence was a proximate cause of plaintiff's falling; (9) plaintiff sustained an injury to his hip at the time he fell on the occasion in question; (10) his damages were fixed at $13,000.00. In answer to the only defensive issue given by the trial court and requested the jury found that in causing the

plaintiff to fall on the occasion of the accident Countryman was not acting in playfulness and that his action was not personal as distinguished from the performance of the duties which he was engaged by the defendant to perform.

The most important question to be decided in this case is whether there is any evidence in the record to show that the act of Countryman in causing Lowry to fall and sustain an injury was committed in the scope of his employment with the building company. Lowry, at the time of receiving the injury in question, was in the performance of a contract whereby he as an independent contractor agreed to do a job of painting in the building for the building company. Countryman was employed by the building company in the designated capacity of building engineer. The duties of Countryman, according to the evidence of Lowry, were the following. (We quote in question and answer form) :

"Q. What was Mr. Countryman's duty there? What did Countryman do during the time that you were at the Anderson Building Company?

"A. He done considerable work around there like working on partitions and things like that and watched over other jobs that were going on there. He was the foreman or inspector over these other jobs and went about and looked them over.

"Q. What was his official title? What he was called?

"A. Engineerman.

"Q. All right, had he been into that one-story building there when you were working before that time, during that time?

"A. Yes.

"Q. How many times do you guess that he was in there during the time that you were working?

"A. Well, every day. He was over there every day. He was still doing some work over there and he came back one time while I was in there and I had just gotten back, I believe, from lunch, and he looked in there and said 'You had better be stepping on it here if you get this done' and I said 'Yes, that is

what I am doing' and he said 'I will stretch you a light in there at night and you can work at night' and I told him 'all right' and he did. He ran a light through the window in there.

"Q. He was the one that suggested to you that you work at night? Mr. Countryman was the one that suggested that you work at night?

"A. Yes."

■ We think the above quoted evidence raised an issue to be determined by the jury as to whether the act of Countryman was committed in the scope of his employment with the building company at the time Lowry received his injury. Countryman and the building manager denied the authority of Countryman to supervise the work being performed by Lowry. In such case, a jury question is presented. Galveston, H. & S. A. Ry. Co. v. Zantzinger, 93 Texas 64, 53 S. W. 379, 47 L. R. A. 282, 77 Am. St. Rep. 829.

■ Implicit in the finding that Lowry was an independent contractor is the control by Lowry of the details of the work being performed at the time of the injury. But this is not conclusive of the authority of the building company to hasten the work, through its servants. Taylor B. & H. R. Co. v. Warner, 88 Texas 642, 32 S. W. 868. If Countryman had authority, express or implied, to supervise the work with respect to hastening its completion and exceeded his instructions or used unlawful force to accomplish such purpose, his act may be said to be in the course of his employment. Texas & N. O. Ry. Co. v. Parsons, 102 Texas 157, 113 S. W. 914, 132 Am. St. Rep. 857. If Countryman turned aside from the work of his master to engage in sport or playfulness for his own amusement, he was not for the time being acting for the master and the master is not liable for the resulting injuries. Galveston, H. & S. A. Ry. Co. v. Currie, 100 Texas 136, 96 S. W. 1073, 10 L. R. A. N. S. 367.

■ The evidence in the record does not raise the issue submitted in special issue No. 5 that Countryman was in the habit of using physical violence upon employees or contractors. Therefore, the finding of negligence in retaining Countryman in the employment of the building company must fail for the lack of evidence to support it. The evidence with respect to the

fitness of Countryman as an employee goes no further than to show a man of a jovial disposition and one who on occasions indulged in pranking or playfulness with his fellow employees. The prior acts of Countryman or his reputation were not shown to be such that his employer might reasonably have foreseen the consequences of an injury such as the one involved in this suit. Neither is the act here involved of such character in itself to warrant the jury in finding that the employer was negligent in retaining Countryman with knowledge of his incompetency. Missouri, K. & T. Ry. Co. of Texas v. Day, 104 Texas 237. 136 S. W. 435, 34 L. R. A. N S. 111, is illustrative of the principles involved.

■■ It is contended by the building company that Lowry is prevluded in this action against it in virtue of a release and compromise agreement executed by him to the insurance company which carried the compensation insurance on the employees of the building company. R. E. Lowry executed to the Massachusetts Bonding & Insurance Company a compromise settlement agreement dated the 5th day of October, 1938. According to such agreement the insurance company paid Lowry the sum of $300.00 in compromise of his claim against said Insurance company, apparently for the same injuries involved in this suit. This compromise agreement seems to have been approved by the Industrial Accident Board. No part of the consideration was paid by the building company, nor did the building company join in the release. Lowry's theory of recovery in this action is upon the basis that he, at the time of receiving his injuries, was an independent contractor and not an employee of the building company. The jury found, as above stated, that Lowry was an independent contractor and by implication not an employee of the building company. The statutory right of compensation inures to "employees" and their beneficiaries. It has been many times held that recovery of compensation is not sutainable in behalf of an independent contractor. Security Union Ins. Co. v. McLeod, (Com. App.) 36 S. W. (2d) 449. It has also been held that the approval by the Industrial Accident Board of a compromise agreement executed between an employee and an insurance company is not an award of compensation. Neither is it an order denying compensation. Commercial Casualty Ins. Co. v. Hilton, 126 Texas 497, 87 S. W. (2d) 1081, 89 S. W. (2d) 1116. It is not an adjudication on the merits of the case by the Industrial Accident Board. Lumbermen's Reciprocal Ass'n v. Day, 17 S. W. (2d) 1043. But the compromise agreement, when approved by the board, is

binding upon the parties to it until the same is set aside. Texas Employers Ins. Ass'n v. Morgan, (Com. App.) 295 S. W. 588. The binding effect given to the agreement between the parties to it cannot upon any sound legal principle be extended to the building company because the aproval of the Industrial Accident Board of such an agreement is not an adjudication by the Board of the issues tended between the claimant and the insurance company. In the Day case, supra, it is said:

"The issue thus drawn was not determined by the Board. The action of the Board in approving the settlement was predicated upon a disagreement on the point as to which no adjudication by the Board was sought."

It is suggested that Lowry, in the assertion of his claim for compensation, of necessity made the contention that he was an employee of the building company and in this suit takes the contrary position that he was an independent contractor. In this connection it may be noted that the building company at the time of learning of Lowry's injury asserted that Lowry was not entitled to compensation insurance because he was not an employee but an independent contractor. Upon this assertion it may be safely assumed that the building company had not included Lowry as an employee when submitting its payroll to the insurance company for the purpose of determining the amount of premium due the insurance company by the building company for the coverage of its employees. The stated contentions of the building company and Lowry may be assumed to be true. The fact still remains that the building company lost no right it theretofore had because of the act and conduct of Lowry in the execution and delivery of the compromise agreement. The building company in this action takes the position and alleges that Lowry was an employee at the time of receiving his injuries, which position is contrary to the one taken when Lowry was trying to ascertain his legal rights. Since the action of the Industrial Accident Board in approving the agreement is not an adjudication as to whether Lowry at the time of receiving his injuries was an employee, it follows that Lowry is not estopped to prosecute this action.

We are asked by Lowry to reverse the judgment of the Court of Civil Appeals and affirm the judgment of the trial court. The building company assigned as errors in the Court of Civil Appeals that the verdict of the jury was without any support in the evidence and that the verdict of the jury was against the

great weight and preponderance of the evidence. The Court of Civil Appeals reversed and rendered the judgment of the trial court because in its opinion there was no evidence to support the verdict of the jury. We may therefore safely assume that the Court of Civil Appeals would have sustained the less onerous assignment if it had not entertained the opinion that there was no evidence to sustain the verdict and would have reversed the judgment of the trial court and remanded the cause for further proceedings. Chapman v. Kellogg, 252 S. W. 151, loc. cit. 156-157, and authorities there cited.

Under the authorities cited and for the reasons stated we cannot affirm the judgment of the trial court. The judgment of the Court of Civil Appeals which reversed and rendered the judgment of the trial court is reversed and the cause is remanded to the trial court for further proceedings.

Opinion adopted by the Supreme Court April 1, 1942.

Rehearing overruled April 29, 1942.